UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| James M. M., | Case No. 24-cv-519 (DSD/DTS) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Martin O'Malley, *Commissioner of Social Security,* | |
| Defendant. | |

## INTRODUCTION

Claimant James M. M. seeks judicial review of the denial of his application for Supplemental Security Income under Title XVI of the Social Security Act.[1] Dkt. No. 9. His claim was denied initially and on reconsideration. Administrative Record (Admin. Rec.) at 98-137; Dkt. No. 7. He requested and received review by an Administrative Law Judge (ALJ), who determined he was not eligible for benefits. *Id.* at 16-25. The Appeals Council denied Claimant's request for review. *Id.* at 1-7. This action followed.

Claimant alleges the ALJ failed to properly evaluate the opinion of his treating psychiatrist, Chhabi L.T. Sharma, MBBS (Sharma). Dkt. No. 9. For the reasons explained below, the Court recommends the Commissioner's decision be affirmed.

---

[1] Claimant's Brief indicates he also seeks review of the denial of his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. However, Claimant withdrew his DIB claim at the hearing on this matter. *See* Admin. Rec. at 42-43; Dkt. No. 7.

**BACKGROUND**

**I.    Procedural History**

On October 20, 2021, Claimant applied for Supplemental Security Income, alleging disability beginning on June 2, 2020 due to anxiety, depression, agoraphobia, panic attacks, post-traumatic stress disorder, and a pulled trapezius muscle. Admin. Rec. at 246-557, 287; Dkt. No. 7. The ALJ held a hearing on January 30, 2023 and issued a decision on May 1, 2023 finding Claimant not disabled. *Id.* at 13-25, 33-67.

The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(a). The Commissioner evaluates "(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is, or approximates, a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *Brock v. Astrue*, 674 F.3d 1062, 1064 n.1 (8th Cir. 2012); *see also* 20 C.F.R. § 404.1520(a)(4).

At Step 1, the ALJ determined that Claimant has not engaged in substantial gainful activity since October 20, 2021. Admin. Rec. at 18; Dkt. No. 7. At Step 2, the ALJ found that Claimant has several severe impairments, including major depressive disorder, social anxiety disorder, posttraumatic stress disorder, and alcohol use disorder. *Id.* At Step 3, the ALJ found that none of these impairments, alone or combined, meets the severity of the impairments listed in 20 C.F.R. § 404. *Id.* at 19-20. At Step 4, the ALJ found that Claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [H]e can perform routine, repetitive, and detailed but not complex tasks and instructions that would align with a Specific Vocational Preparation of 1 or

2

> 2 as defined in the DOT. The claimant can have occasional brief interaction with co-workers and the public; however, the tasks performed are those that can be done independently and without collaboration or teamwork with coworkers. There can be no direct serving of the public. The claimant can occasionally interact with supervisors. There can be no fast paced or high production goal or quota type tasks, such as assembly line or a moving conveyor belt.

*Id.* at 20. Given this RFC, the ALJ determined that Claimant would be unable to perform his past relevant work as a warehouse clerk or banquet set-up worker. *Id.* at 24. At Step 5, the ALJ concluded that Claimant could perform work that existed in the national economy and identified three occupations suited to his abilities, representing 360,000 jobs in the national economy. *Id.* at 24-25. The ALJ accordingly denied Claimant's application. *Id.* at 25. Claimant now appeals that denial to this Court, challenging the ALJ's RFC determination at Step 4. Dkt. No. 9.

## II.     Medical Records

When determining Claimant's RFC, the ALJ evaluated Claimant's medical history based on the treatment records from psychiatrist Chhabi Sharma and therapist Christina Ruiz, medical opinions from Sharma and State Agency psychological consultants, and Claimant's testimony at the administrative hearing.

### A.     Medical History

According to the ALJ, Claimant had mental health treatment throughout 2020 where he "appeared anxious and sad at times," but "had normal judgment and insight, logical thoughts, cooperative behavior, and intact cognitive functioning." Admin. Rec. at 21; Dkt. No. 7. The ALJ supported this assertion by citing treatment notes from nine appointments with Ruiz and one appointment with Sharma after the alleged onset date. *Id.* (citing Admin. Rec. at 465-502).

3

Next, the ALJ notes, a February 2021 psychiatric exam with Sharma revealed Claimant "had been doing well in general" and was "friendly and cooperative with normal speech, somewhat restricted range of affect, logical thoughts, intact memory, and good insight, judgment, attention, and concentration." *Id.* (citing Admin. Rec. at 589-90). Moreover, in March and June 2021, the ALJ explained, Claimant "attended psychotherapy . . . where his condition appeared largely stable. He was anxious and sad, but he had intact insight and judgment with logical thoughts, cooperative behavior, and good insight, judgment, attention, and concentration." *Id.* (citing Admin. Rec. at 572-85).

Thereafter, the ALJ notes, Claimant had an October 2021 psychiatric exam with Sharma during which he said he had "not been doing poorly despite some stressors" and that medication managed his conditions "relatively well." *Id.* at 21-22 (citing Admin. Rec. at 568). In November 2021, Claimant seemed anxious and sad but displayed intact insight and judgment. *Id.* (citing Admin. Rec. at 564).

In December 2021, the ALJ describes, Claimant struggled to manage his social anxiety but "had normal thoughts and associations with intact judgment and insight," as perceived by Ruiz. *Id.* (citing Admin. Rec. at 756). That month, Claimant also told Sharma that his nightmares had increased but his medications were working "fairly well" overall. *Id.* (citing Admin. Rec. at 747). Claimant's sleep struggles continued in January 2022, causing him to be irritable and frustrated, with a "worsening mod and anxiety symptoms due to poor sleep." *Id.* (citing Admin. Rec. at 743). However, the ALJ notes, his exam findings at an appointment with Ruiz were "relatively stable." *Id.*

The ALJ noted that Claimant's symptoms improved in February 2022. On February 1, 2022, Claimant reported to Ruiz that he was sleeping better, though still experiencing

4

"ongoing anxiety and depression with fatigue." *Id.* (citing Admin. Rec. at 918). By February 16, 2022, Claimant had been "doing a little better," his "depression and anxiety were stable," and his medications were working well, according to Sharma's treatment record. *Id.* (citing Admin. Rec. at 925).

In March 2022, the ALJ explained, Claimant reported "poor sleep, fatigue, nightmares, and feeling foggy" to Ruiz and Sharma, and Sharma found Claimant's attention, concentration, and insight reduced from "good" to "fair." *Id.* (citing Admin. Rec. at 932-42). Otherwise, his "objective exam findings were largely stable." *Id.* In April 2022, Claimant's insomnia improved, but he was "still struggling with anxiety daily." *Id.* (citing Admin. Rec. at 949). However, the ALJ notes, a May 2022 psychiatric exam with Sharma revealed improved attention, concentration, and insight, normal speech and logical thoughts, and stable mood and anxiety symptoms. *Id.* (citing Admin. Rec. at 956).

After a three-month break in care, during which he did not respond to contact from his provider, Claimant reported increased worry and social anxiety that kept him homebound. *Id.* (citing Admin. Rec. at 962, 965-66). Based on a treatment record from Sharma in September 2022, however, the ALJ noted that Claimant was anxious but "appeared friendly and cooperative with logical thoughts and good insight, judgment, and attention." *Id.*

**B.    Medical Opinions**

Sharma, Claimant's treating psychiatrist, and Drs. David Biscardi and Mera Kachgal, State Agency psychologists, provided medical opinions regarding Claimant's functional limitations.

On November 10, 2021, Sharma stated that Claimant had marked limitations understanding, remembering, and carrying short simple instructions, making simple work-related decisions, and interacting appropriately with co-workers and supervisors. *Id.* at 729-30. He found that Claimant had extreme limitations understanding, remembering, and carrying out detailed instructions, interacting appropriately with the public, and responding to work pressures and changes. *Id.* Sharma indicated that it is "extremely hard for [Claimant] to be around people, to be able to use public transportation, and even do shopping by himself." *Id.* at 730. The ALJ found this opinion unpersuasive and unsubstantiated by Claimant's medical records, including Sharma's own treatment records. *Id.* at 23. According to the ALJ, "objective exam notes showed that the claimant had variable symptoms, but he generally demonstrated intact cognition, appropriate behavior, and normal speech and thought processes," which the ALJ found "incongruent with Sharma's opinion." *Id.*

On December 17, 2021, medical consultant Dr. David Biscardi evaluated Claimant's medical disability claim and found no limitations understanding, remembering, or applying information and only moderate concentration and persistence limitations. *Id.* at 103-04. He found Claimant could "understand, remember, carry out and sustain performance of 1-3-step tasks, complete a normal workday, interact briefly/superficially with co-workers/supervisors with limited public contact, and adapt to changes/stressors associated with simple routine competitive work activities." *Id.* at 104. Medical consultant Dr. Mera Kachgal reconsidered and affirmed Dr. Biscardi's determination on February 28, 2022. *Id.* at 134-35. The ALJ found these opinions generally persuasive and consistent

with clinical findings, mental status examinations, clinical observations made by providers. *Id.* at 23.

### C. Testimony

At the administrative hearing, Claimant testified about his symptoms and limitations. He testified that he experiences severe agoraphobia and social anxiety that prevents him from leaving his home, causes him to cancel plans and appointments, and precludes him from working. *Id.* at 43-63. According to Claimant, neither therapy nor medication improved his ability to function. *Id.* at 53-55. He asserted that his limitations would prevent him from attending work eight hours a day, five days a week; and even if he made it to work, it would be "extremely difficult" to understand and carry out job tasks due to his body's physical symptoms. *Id.* The ALJ found Claimant's alleged limitations "only partially consistent with the evidence" because "despite sadness and anxiety, he displayed logical thought processes, cooperative and friendly behavior, intact memory, and good concentration, attention, insight, and judgment." *Id.* at 24.

Ultimately the ALJ found that "claimant's symptoms are [not] so severe as to prohibit him from performing all basic work activities," and concluded he was not disabled. *Id.*

## ANALYSIS

Claimant argues the RFC determination is not supported by substantial evidence because the ALJ failed to discuss whether Sharma's opinion was supported by objective medical evidence and consistent with other medical sources. Therefore, he contends, the Commissioner's decision should be reversed or remanded for further proceedings. The Commissioner counters that the ALJ properly addressed the opinion's persuasiveness

7

and the RFC determination is supported by substantial evidence. For the reasons set forth below, this Court recommends the Commissioner's decision be affirmed.

**I.       Standard of Review**

Disability under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under Social Security regulations, disability means the impairments are so severe that the claimant is not only unable to engage in previous work but cannot engage in any other kind of substantial gainful employment that exists in the national economy. *Id.* § 423(d)(2)(A). The claimant bears the burden of proving entitlement to disability benefits. *See* 20 C.F.R. § 404.1512(a)(1); *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013).

Upon review of an ALJ's decision, a court has authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing a decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (sentence four). The Court must uphold the Commissioner's decision if it is supported by substantial evidence in the record as a whole and is not based on legal error. *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018). Substantial evidence is "less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion." *Chismarich*, 888 F.3d at 979 (quotation omitted). The Court "must consider evidence that supports and detracts from the ALJ's decision." *Cuthrell v. Astrue*, 702 F.3d 1114, 1116 (8th Cir. 2013). "If, after

reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Id.* (quotation omitted).

## II. RFC Determination

"A claimant's RFC is 'the most he can still do despite his limitations.'" *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019) (quoting 20 C.F.R. § 404.1545(a)(1)). "The ALJ determines a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). An ALJ's analysis should demonstrate a consideration of all impairments, both severe and non-severe, in arriving at the RFC. *See Mark E. v. Kijakazi*, No. 20-cv-2047, 2021 WL 6066260, at *9 (D. Minn. Dec. 7, 2021). ALJs are not required to give a specific level of deference to any type of evidence but must assess all opinions' persuasiveness. 20 C.F.R. § 404.1520c(a). The most important factors in determining persuasiveness are supportability and consistency. *Id.* Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support" the opinion, the more persuasive that opinion is. *Id.* at (c)(1). Similarly, the more consistent the opinion is with evidence from other sources, both medical and nonmedical, the more persuasive the opinion is. *Id.* at (c)(2). An ALJ must "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions" in the decision. *Id.* at (b)(2). "No talismanic language is required for the ALJ to meet the requirements of § 404.1520c, only that the ALJ make it clear that they

9

considered the supportability and consistency of an opinion." *Mario O. v. Kijakazi*, No. 21-cv-2469, 2022 WL 18157524, at *11 (D. Minn. Dec. 13, 2022) (citations omitted).

Claimant argues the ALJ erred in his analysis of Sharma's opinion because he failed to analyze the opinion under the supportability and consistency factors set forth in 20 C.F.R. § 404.1520c, resulting in an inaccurate RFC. Sharma opined that Claimant had "'marked" and "extreme" limitations that would preclude any competitive employment. The ALJ found this opinion unpersuasive, writing:

> While Dr. Sharma treated the claimant, the record, including Dr. Sharma's own treatment notes, failed to establish such substantial limitations. Indeed, the objective exam notes showed that the claimant had variable symptoms, but he generally demonstrated intact cognition, appropriate behavior, and normal speech and thought processes, which findings are incongruent with Dr. Sharma's opinion.

Admin. Rec. at 23; Dkt. No. 7. According to Claimant, this analysis is "woefully inadequate" because it fails to explain why Sharma's limitations are unsupported and makes no findings regarding consistency with other evidence in the record. The Court finds, however, that the ALJ properly considered the supportability and consistency of Sharma's opinion.

An ALJ analyzes an opinion's supportability by evaluating the "objective medical evidence and supporting explanations presented by a medical source [] to support his or her medical opinion." 20 C.F.R. § 404.1520c(c)(1). In this case, the ALJ considered the supportability of Sharma's opinion by finding his degree of recommended limitations unsupported by his treatment notes. The ALJ's evaluation of Sharma's opinion comes after a lengthy discussion of Claimant's treatment history, including numerous citations to treatment notes that contradict his recommended limitations. *See Troy L. M. v. Kijakazi*, No. 21-cv-199, 2022 WL 4540107, at *11 (D. Minn. Sept. 28, 2022) (affirming a brief

supportability analysis that followed a "full page discussion of a Plaintiff's mental health records"); *Jason P.P. v. Kijakazi*, Case No. 20-cv-688, 2021 WL 4483040, at *12-13 (D. Minn. Sept. 30, 2021) (finding supportability properly analyzed when the ALJ "chronicled Plaintiff's course of treatment" by the examiner in question and "accurately described the plaintiff's course of care in the determination"). For example, the ALJ referenced notes that Claimant was "doing well," had "good insight, judgment, attention, and concentration," reported his condition was managed well by medication, and exhibited an improved mood. Admin. Rec. at 21-22; Dkt. No. 7. Sharma cited no specific medical records to support the "marked" and "extreme" limitations he identified. *Tracey L. W. v. Kijakazi*, No. 21-CV-2441, 2023 WL 2600217, at *7 (D. Minn. Mar. 22, 2023) (upholding an ALJ's determination that an opinion citing no objective medical evidence was unpersuasive). As such, the ALJ properly concluded that Sharma failed to support the substantial limitations he recommended.

Regarding consistency, "an opinion is more persuasive if it is more consistent with the overall evidence as a whole." *Id.* (quoting *Morton v. Saul*, No. 2:19-cv-92, 2021 WL 307552, at *7 (E.D. Mo. Aug. 8, 2022)). Here, the ALJ analyzed Sharma's opinion and found it "incongruent" with the record as a whole. The ALJ conceded that Claimant exhibited variable symptoms, but he concluded that Claimant "generally demonstrated intact cognition, appropriate behavior, and normal speech and thought processes." Admin. Rec. at 23; Dkt. No. 7. This conclusion followed the ALJ's thorough analysis of Sharma and Ruiz's treatment notes, which consistently found Claimant's thoughts and associations normal and his judgment and insight intact. *Id.* at 21-22. Moreover, the ALJ considered Sharma's opinion alongside opinion evidence from the state agency

11

psychologists, who determined that Claimant had no limitations understanding, remembering, or applying information and only had moderate limitations regarding concentration and persistence. *Id.* at 23. The Court finds no error in the ALJ's analysis of the consistency of Sharma's opinion with evidence in the record.

When determining Claimant's RFC, the ALJ analyzed the record as a whole and found it "incongruent" with Sharma's opinion. Claimant disagrees and asks the Court to reevaluate the persuasiveness of Sharma's opinion. However, the Court finds the ALJ's analysis sufficient, and it is not Court's function to reweigh the evidence. *See Dols v. Saul*, 931 F.3d 741, 746 (8th Cir. 2019).

## RECOMMENDATION

Based on the record, memoranda, and proceedings herein, and for the reasons stated above, the Court RECOMMENDS THAT:

1. Plaintiff's request to reverse the Commissioner's decision [Dkt. No. 9] be **DENIED.**

2. Defendant's request to affirm the Commissioner's decision [Dkt. No. 11] be **GRANTED**.

Dated: August 22, 2024           s/David T. Schultz
                     DAVID T. SCHULTZ
                     United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).